UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

REBECCA WIRTH

        Plaintiff

  v.                                      Case No. 18-CV-910

RLJ DENTAL, S.C.,

        Defendant

---

## PLAINTIFF'S BRIEF IN SUPPORT OF HER
## MOTION FOR ATTORNEYS' FEES

---

NOW COMES Plaintiff, Rebecca Wirth, by and through her counsel, Walcheske & Luzi, LLC, and as and for *Plaintiff's Brief in Support of Her Motion for Attorneys' Fees*, submits the following arguments for this Court's consideration.

## **INTRODUCTION**

This case was brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and WIS. STAT. §§ 109.01 *et seq.*, WIS. STAT. §§ 103.11 *et seq.*, and WIS. ADMIN. CODE §§ DWD 274.01 *et seq.*, collectively Wisconsin's Wage Payment and Collection Laws ("WWPCL"). To wit, Plaintiff, Rebecca Wirth, alleged that Defendant, RLJ Dental, S.C., violated the WWPCL by failing to compensate her for compensable meal periods and/or rest periods of short duration as well as a compensable staff meeting. Wirth further alleged that Defendant violated the FLSA by terminating her employment in retaliation for protected activity.

Following trial, the jury returned its *Special Verdict* in favor of Wirth as to each of her WWPCL claims. (ECF No. 79.) On September 10, 2021, this Court entered its *Judgment in a Civil*

*Case* in favor of Wirth on her WWPCL claims in the amount of $597.81. (ECF No. 80.) Wirth's claim for retaliatory discharge under the FLSA was dismissed. (*Id.*)

Because Wirth is a "prevailing party" under the WWPCL by virtue of this Court's *Judgment in a Civil Case*, (ECF No. 80), she is entitled to her expenses, including an award of reasonable attorneys' fees, spent litigating her WWPCL claims. Accordingly, Wirth seeks reimbursement of her reasonable attorneys' fees in the total amount of $141,400.00 as specified in the accompanying Declarations.

## **PROCEDURAL POSTURE**

On June 16, 2018, Wirth filed her *Complaint* asserting two (2) claims against Defendant: Wirth's First Claim for Relief alleged retaliatory discharge under the FLSA ("FLSA Retaliation Claim"); and Wirth's Second Claim for Relief alleged Defendant's failure to compensate her for attending a compensable staff meeting under the WWPCL ("WWPCL Staff Meeting Claim"). (ECF No. 1.) Thereafter, Defendant filed its *Answer and Affirmative Defenses* setting forth its general denials and affirmative defenses. (ECF No. 8.)

On September 11, 2018, the parties filed their *Joint Rule 26(f) Conference Report*. (ECF No. 11.) Therein, the parties noted that:

> [T]he Plaintiff *is willing to engage in mediation* in an effort to resolve this lawsuit. Defendant is willing to consider settlement, but *is not prepared to mediate* at this time.

(*Id.* at p. 2) (emphasis added.)

On September 18, 2018, the parties appeared at a telephone scheduling conference pursuant to FED. R. CIV. P. ("Rule") 16. (ECF No. 12.) While discussing the "nature and status of the FLSA case," Plaintiff's counsel, by Attorney Matthew J. Tobin, acknowledged that Wirth "[wa]s re-

employed," *i.e.* Wirth's lost wages had stopped accruing. (*Id.*) "The Court inform[ed] the parties of mediation services offered by Magistrate Judge." (*Id.*)

On October 1, 2018, Wirth served *Plaintiff's Rule 26(a)(1) Initial Disclosures.* (Declaration of Matthew J. Tobin ("Tobin Decl."), Ex. 1.) Therein, Plaintiff estimated her current attorneys' fees, costs, and disbursements to be $10,750.00. (*Id.*)

On or about December 12, 2018, and following the deposition of Defendant's Operations Manager, Connie Zirbel, Attorney Tobin, on behalf of Wirth, initiated an informal discussion with Attorney Patrick J. Coffey, for Defendant, regarding the possibility of resolution. (Tobin Decl., ¶ 11.) However, no formal settlement offers were exchanged by the parties at that time. (*Id.*)

On December 19, 2018, Wirth made a confidential settlement offer pursuant to FED. R. EVID. 408 in the amount of $32,500.00, inclusive of attorneys' fees and costs. (Tobin Decl., ¶ Ex. 2.) Defendant neither responded to Wirth's settlement demand, nor provided a counteroffer. (Tobin Decl., ¶ 11.)

On February 11, 2019, Wirth filed her *Amended Complaint* and asserted three (3) claims against Defendant. Wirth repeated her FLSA Retaliation Claim and WWPCL Staff Meeting Claim, and she added her Third Claim for Relief, which alleged that Defendant failed to compensate her for compensable meal periods and/or rest periods of short duration under the WWPCL ("WWPCL Rest Period Claim").

On March 15, 2019, one month after filing her *Amended Complaint,* Wirth served Defendant with *Plaintiff's Supplemental Rule 26(a)(1) Initial Disclosures.* (Tobin Decl., Ex. 3.) Therein, Wirth specified past due wages owed "in an amount no less than $588.56." (*Id.* at p. 3.) Wirth further identified liquidated damages "[i]n an amount equal to 1.5 times Plaintiff's Wages," or "no less than $294.28." (*Id.*) Last, Wirth delineated that her "attorneys' fees, costs, and

disbursements are approximately $28,652.00 to date," noting that, "[t]his number [attorneys' fees, costs, and disbursements] will increase as this matter progresses." (*Id.*)

During the vast majority of the litigation, Defendant elected not to make any settlement offers to Wirth. (Tobin Decl., ¶ 15.) Likewise, despite the relatively modest monetary value of Wirth's claims, Defendant did not make a statutory offer of judgment pursuant to Rule 68. (*Id.*)

On August 9, 2019, Wirth filed *Plaintiff's Motion for Summary Judgment* solely as to her WWPCL Rest Period Claim. (ECF No. 20.) In *Plaintiff's Proposed Finding of Fact in Support of Her Motion for Summary Judgment,* Wirth identified "eighty-nine (89) meal periods lasting less than thirty (30) consecutive minutes in duration," totaling "thirty-two hours (32) and thirty-four minutes (34)" of uncompensated work time, which amounted to "$588.56 … based on her respective rates of pay at her regular rate." (ECF No. 22, p. 9.) On August 12, 2019, Defendant filed *Defendant's Motion for Summary Judgment* solely as to Wirth's WWPCL Staff Meeting Claim and WWPCL Rest Period Claim. (ECF No. 24.) This Court denied the parties' cross-motions for summary judgment. (ECF No. 42).

On March 18, 2020, the parties appeared before this Court at a telephonic status conference. (ECF No. 43.) At that time, Attorney Tobin "update[d] the Court as to settlement negotiations." (*Id.*) "The parties agreed to mediation before the magistrate judge." (*Id.*)

On April 30, 2020, Wirth made an initial settlement demand of $97,487.50, inclusive of her attorneys' fees and costs. (Tobin Decl., Ex. 4.) Wirth described Defendant's exposure as to her WWPCL Claims to be $588.56, which amount would increase $294.28 with an award of liquidated damages. (*Id.*) Wirth stated that her "attorneys' fees and costs are expected to be in excess of $85,000.00 through the end of mediation" but "is willing to accept $79,954.66 to resolve her attorneys' fees" as part of her opening offer. (*Id.*)

On May 5, 2020, and in response to Wirth's initial settlement demand, Defendant proffered its one and only pre-trial settlement offer to date, *i.e.,* "to allow Ms. Wirth to dismiss her claims in exchange for making a payment of $1,800.00" to Defendant. (Tobin Decl., Ex. 5.)

On June 4, 2020 beginning at 10:15 a.m., the parties appeared at mediation before Magistrate Judge James R. Sickel via Zoom videoconference. (ECF No. 47.) Following initial caucuses, Judge Sickel advised Wirth that the case was not going to settle. (Tobin Decl., ¶ 18; Declaration of David M. Potteiger ("Potteiger Decl."), ¶ 15.) As a result, the mediation was concluded without a further exchange of offers. (*Id.*)

Having not resolved despite multiple efforts from Plaintiff, the case proceeded to a jury trial held on September 7, 2021 and September 8, 2021. The jury returned its *Special Verdict* in favor of Wirth as to each of her WWPCL claims. (ECF No. 8.) On September 10, 2021, this Court entered its *Judgment in a Civil Case* in favor of Wirth on her WWPCL claims in the amount of $597.81. (ECF No. 80.) Wirth's claim for retaliatory discharge under the FLSA was dismissed. (*Id.*)

Following the entry of judgment, on September 15, 2021, Wirth requested a stipulation from Defendant for an additur to the *Judgment in a Civil Case* in the amount of $298.81 "in order to avoid the expense to both parties of the motion" and further noting, "[s]urely, briefing the issue will be more costly to your client." (Potteiger Decl., Ex. 1.) Wirth further sought "to negotiate the attorneys' fee award to avoid the expense to both parties of ligating" by offering to resolve the issue for $130,000.00, a reduction of more than $50,000.00. (*Id.*) Defendant offered to resolve Wirth's WWPCL claims for a total of $10,000 inclusive of attorneys' fees. (*Id.*) Defendant further refused to stipulate as to liquidated damages absent a global resolution on attorneys' fees. (*Id.*)

**ARGUMENT**

**I. AN AWARD OF ATTORNEYS' FEES IS CONSISTENT WITH THE PURPOSE AND BROAD REMEDIAL LANGUAGE OF THE WWPCL**

Whether attorneys' fees are awardable in this case is a matter of state law. *Blue Ribbon Feed Company, Inc. v. Farmers Union Central Exchange, Inc.*, 731 F.2d 415, 422 (7th Cir.1984). Under Wisconsin law, "[i]n an action by an employee or the department against the employer on a wage claim … the court may allow the prevailing party, in addition to all other costs, a reasonable sum for expenses." WIS. STAT. § 109.03(6).

In analyzing the language of WIS. STAT. § 109.03(6), the Wisconsin Court of Appeals determined that the term "expenses" necessarily includes an award of attorneys' fees. *Jacobson v. Am. Tool Companies, Inc.*, 222 Wis. 2d 384, 401 (Ct. App. 1998) (finding that an award of attorneys' fees is necessary to fully enforce and give meaning to the WWPCL). Likewise, in considering WIS. STAT. § 109.03(6), this District also determined that the term "expenses" includes an award of attorneys' fees. *Jackman v. WMAC Inv. Corp.*, 610 F. Supp. 290, 291 (E.D. Wis. 1985), *aff'd*, 809 F.2d 377 (7th Cir. 1987) (finding that an award of attorneys' fees is consistent with the purpose and broad remedial language of the statute).

More recently, the Wisconsin Court of Appeals held that a circuit court's unsubstantiated reduction of attorneys' fees undermined the purpose of the fee-shifting provisions which was "to encourage wage claimants to bring meritorious claims and to help ensure that successful claimants are made whole." *Johnson v. Roma II-Waterford LLC*, 346 Wis. 2d 612, 626 (Ct. App. 2013). Courts have similarly noted that attorney fees awards incentivize attorneys to accept wage claims. *See e.g., Beaudette v. Eau Claire Cty. Sheriff's Dep't*, 265 Wis. 2d 744, 766 (Ct. App. 2003.)

In fact, there are only two (2) cases in Wisconsin jurisprudence in which a circuit court's denial of attorneys' fees pursuant to WIS. STAT. § 109.03(6) was upheld by a reviewing court –

both unpublished. *See Conway v. Trick*, 192 Wis. 2d 762 (Ct. App. 1995) and *Vercauteren v. Rainbow Insulatots, Inc.*, 223 Wis. 2d 801 (Ct. App. 1998). These cases are factually distinguishable.

In *Conway,* the trial court concluded that the parties "contributed to carrying this [case] to this bizarre extreme … this matter should have been settled long ago." *Conway*, 192 Wis. 2d 762 at *6. The appellate court affirmed the circuit court's finding that the remedial purpose of the statute is frustrated when "a party or counsel abuses the privilege of using the legal system." *Id.*

While vexatious litigation may, *in extreme cases*, prevent an award of attorneys' fees pursuant to WIS. STAT. § 109.03(6), the outcome of *Conway* is circumspect following the holding of *Johnson, supra,* nearly twenty (20) years later. In *Johnson,* the circuit court found that "the litigation had been emotionally driven" and the parties had "allowed their emotions to basically guide their behavior and demeanor throughout the lawsuit, bumping up fees that should never have gone [so] far." 346 Wis. 2d. at 622-623. Nevertheless, the Wisconsin Court of Appeals reversed the circuit court's decision, explaining that the circuit court failed to justify a 90% reduction in attorneys' fees and "appeared to 'eyeball' a figure of $10,000 in light of its findings that the parties over-litigated" but failed to explain "what aspects of the litigation were unnecessary or excessive due to emotional actions." *Id.* at 625-626. The appellate court was further concerned that "the decision appear[ed] to turn the purpose of the fee-shifting provisions on its head … effectively plac[ing] almost all of the blame on [the plaintiff] without an explanation as to why this is appropriate." *Id.* at 626-627.

Here, there is no evidence in the record that either Wirth or her counsel abused the privilege of using the legal system by engaging in vexatious litigation. Indeed, the record supports a conclusion that Wirth pursued her claims as a matter of last resort while Defendant elected to

litigate nearly every legal and factual dispute through trial. (*See, gen.*, Potteiger Dec; Tobin Decl.) In the most recent example, Wirth sought a stipulation from Defendant for an additur to the *Judgment in a Civil Case* in the amount of $298.81 pursuant to WIS. STAT. § 109.11(2)(a) "in order to avoid the expense to both parties of the motion." (Potteiger Decl., Ex. 1.) Defendant rejected Wirth's overture, again forcing continued litigation. (*Id.*)

Turning next to *Vercauteren,* there the appellate court affirmed the circuit court's refusal to grant an award of fees to the plaintiff after considering the following facts: (1) the defendant had made a settlement offer of $6,000 to plaintiff prior to litigation; (2) the defendant renewed its offer after the commencement of the suit but before any significant expenses had been incurred; and (3) following a two day jury trial, the plaintiff's recovery was $5,253.75. *Vercauteren,* 223 Wis. 2d 801 at * 3. In other words, *Vercauteren* stands for the proposition that where a party rejects substantial settlement offers and achieves a result commensurate with that offer, a reduction in fees is appropriate. That sentiment was echoed by the Seventh Circuit Court of Appeals in *Moriarty v. Svec*, where the court noted that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply." 233 F.3d 955, 967 (7th Cir. 2000).

Standing in stark contrast, here, the record before the Court convincingly shows that Wirth's repeated efforts to resolve the litigation at various stages of this case were met with either silence or obstinance. Indeed, *the only* settlement offer ever extended by Defendant came twenty-three (23) months into the litigation and *was for Wirth to pay Defendant the sum of $1,800.00 for the privilege of dismissing WWPCL claims that she ultimately won at trial*. (Tobin Decl., Ex. 5.) Defendant's litigation strategy thus necessitated a trial posture to recover on Wirth's meritorious wage claims.

As described herein, an award of attorneys' fees is consistent with the purpose and broad remedial language of the WWPCL. Although an award of attorneys' fees is discretionary, this case is decidedly distinct from the only instances in which a court denied an award of attorneys' fees to a prevailing party. Consequently, and because Wirth is a prevailing party, attorneys' fees are awardable in the present case pursuant to WIS. STAT. § 109.03(6).

## II. BY VIRTUE OF THIS COURT'S JUDGMENT IN HER FAVOR, WIRTH IS A PREVAILING PARTY UNDER THE WWPCL

As noted above, WIS. STAT. § 109.03(6) permits an award of attorneys' fees to a "prevailing party." Whether Wirth is a "prevailing party" pursuant to WIS. STAT. § 109.03(6) is a matter of state law. *Metavante Corp. v. Emigrant Sav. Bank*, 2009 WL 4556121, at *3 (E.D. Wis. Nov. 27, 2009), *aff'd*, 619 F.3d 748 (7th Cir. 2010).

In *Metavante,* this District summarized Wisconsin law as follows:

> In Wisconsin, to be a 'prevailing party,' it is not required that a party win a lawsuit in 'all respects.' *Wis. Seafood Co. v. Fisher*, 255 Wis. 2d 833 (Ct. App. 2002). Instead, a party has 'prevailed' if 'he or she succeeds on any significant issue in the litigation which achieves some of the benefit sought by bringing suit.' *Footville State Bank v. Harvell*, 146 Wis. 2d 524, 539–40 (Ct. App. 1988) (defining 'prevailing party' in the context of the Wisconsin Consumer Act); *see also Wis. Seafood Co.* 2002 WI App at ¶ 21 (defining 'prevailing party' as 'the party to a suit who successfully prosecutes the action or successfully defends against it ... even though not necessarily to the extent of his original contention' in litigation over the meaning of the phrase as used in a contract); *In re Protective Placement of J.S.*, 144 Wis. 2d 670, 679 (Ct. App. 1988) (borrowing the definition for 'prevailing party' from *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

*Metavante*, 2009 WL 4556121 at *3.

In the present case, Wirth is a "prevailing party" pursuant to WIS. STAT. § 109.03(6) because she "succeeded on a significant issue in the litigation," (*i.e.,* Defendant was adjudged to have wrongfully withheld wages owed to Wirth under the WWPCL), and Wirth "achieved some of the benefit sought by bringing suit," (*i.e.* an award of unpaid wages in the amount of $597.81).

Wirth anticipates Defendant will argue that because Wirth's FLSA Retaliation Claim was dismissed, Wirth is not a "prevailing party" *in totum.* Such an argument is misplaced and contrary to Wisconsin law. *See, e.g., Greenheck v. Updike,* 187 Wis. 2d 295 (Ct. App. 1994) (unpublished). Indeed, in *Greenheck,* the Wisconsin Court of Appeals reversed a circuit court's decision to preclude an award of attorneys' fees, holding that although the plaintiff did not prevail on other aspects of the case, he "did 'prevail' on his wage claim within the meaning of WIS. STAT. § 109.03(6)." *Id.* at * 4.

In so deciding, the appellate court found the reasoning in *Paulik v. Coombs*, 120 Wis. 2d 431 (Ct. App. 1984), persuasive. In *Paulik*, tenants filed suit against a landlord for the landlord's failure to return the tenants' security deposit. *Id.* at 434. The landlord countersued for damages to the leased premises and for the tenants' failure to provide proper notice terminating the lease. *Id.* Both parties won their respective claims and, after offsets, the circuit court entered a judgment in the amount of $165.10 to the landlord. The Wisconsin Court of Appeals reversed the circuit court's refusal to award attorneys' fees finding that "the only requirement necessary for the tenant to be awarded attorneys fees is that he prevail on his *claim.*" *Id.* at 438 (emphasis original).

Similarly, in *Englebert v. Calumet River Fleeting, Inc.*, the plaintiff brought both a breach of contract claim arising out of her employer's refusal to provide a severance payment under an employment contract, as well as unpaid overtime wages. 378 Wis. 2d 327, * 8 (Ct. App. 2017). The circuit court denied the plaintiff's request for attorneys' fees concluding that an award of $309,833.701 in severance pay and $2,694.80 in overtime pay did not qualify as "wages" pursuant to WIS. STAT. § 109.03(3). However, the Wisconsin Court of Appeals reversed, holding that the plaintiff's claim for unpaid overtime constituted wages under WIS. STAT. § 109.03(3). *Id.* at * 8.

The appellate court remanded the case to the circuit court to determine an award of attorneys' fees solely as to those wages covered by the WWPCL.

Here, Wirth obtained a favorable judgment with respect to both her WWPCL Staff Meeting Claim and WWPCL Rest Period Claim. Having been awarded relief on all aspects of her WWPCL claims against Defendant, Wirth must be considered a "prevailing party" in accordance with WIS. STAT. § 109.03(6).

Wirth further assumes that Defendant will argue that she is not a "prevailing party" because the amount of the *Judgment in a Civil Case* (currently $597.81) is less than the amount she sought in litigation. (ECF No. 80). Such an argument is also without merit. First, Wirth recovered more than what she sought with respect to her WWPCL claims, which, as noted above, are the operative claims for determining whether Wirth is a "prevailing party" under WIS. STAT. § 109.03(6). Next, to constitute a "prevailing party" under Wisconsin law, "it is not necessary that one must either obtain an affirmative judgment in his or her favor or win the lawsuit in all respects" so long as "some benefit" is conferred. *Footville State Bank,* 146 Wis. 2d at 540. Thus, the amount of relief is not relevant to determining whether Wirth is a "prevailing party." Rather, Defendant's argument is a basis for a potential reduction of attorneys' fees commensurate with "the successfully litigated issues." *Id.*

For these reasons, this Court should conclude that Wirth is a "prevailing party" pursuant to WIS. STAT. § 109.03(6) and find that Wirth attorneys' fees and costs are thus awardable.

### III. USING THE LODESTAR METHOD, PLAINTIFF'S REASONABLE ATTORNEYS' FEES ARE $141,400.00

As stated herein, whether attorneys' fees are awardable to Wirth pursuant to WIS. STAT. § 109.03(6) is a matter of substantive state law. *Blue Ribbon Feed Company, Inc.*, 731 F.2d at 422. However, "the method of quantifying a reasonable fee is a procedural issue governed by federal

law." *Oldenburg Grp. Inc. v. Frontier-Kemper Constructors, Inc.*, 597 F. Supp. 2d 842, 847 (E.D. Wis. 2009).

Generally, when a plaintiff is a prevailing party and thus entitled to reimbursement for attorneys' fees, a court determines the market price for a lawyer's legal services via the "lodestar" method – which is determined by calculating the lawyer's reasonable hourly rate multiplied by the lawyer's hours reasonably expended on the case. *Hensley*, 461 U.S. at 433-37; *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640–43 (7th Cir. 2011); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). Ultimately, the court "must do [its] best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."[1]

### A.     Plaintiff's Counsel's Hourly Rates Are Reasonable

A "reasonable" hourly rate reflects the "market rate" for the attorney's services. *Pickett*, 664 F.3d at 640; *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993). An attorney's actual billing rate for comparable work or similar litigation is appropriate to use as the market rate. *See, e.g., Pickett*, 664 F.3d at 640. Ultimately, a fee applicant need only offer third

---

[1] *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (*"Synthroid I"*); *see also In re Synthroid Mktg Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) (*"Synthroid II"*); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013); *Steinlauf v. Cont'l Illinois Corp.*, 962 F.2d 566, 572-73 (7th Cir. 1992) (stating, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client").

party affidavits attesting to comparable billing rates to meet her burden. *Id.* at 641; *Spegon*, 175 F.3d at 556.

The United States Supreme Court and the Seventh Circuit have routinely held that paying attorneys' fees awards *at current billing rates*, rather than the rates *historically applicable* to each year during the litigation, is reasonable. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) (approving fee award at "current rather than historic hourly rates"); *Pennsylvania v. Del. Valley Citizens' Council*, 483 U.S. 711, 716 (1987); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 957 (E.D. Wis. 2003), *aff'd*, 93 F. App'x 81 (7th Cir. 2004) (stating that "a prevailing party is not only entitled to the amounts that the attorney would have billed and/or that the plaintiff paid, but the present value of those amounts."); *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) (finding that the district court abused its discretion by failing to award a delay enhancement to account for the delay between fees incurred and the fee award); *Fleming v. Kane Cty.*, 688 F. Supp. 1264, 1272 (N.D. Ill. 1988), *aff'd sub nom*, *Fleming v. Cty. of Kane, State of Ill.*, 898 F.2d 553 (7th Cir. 1990) (stating that "[c]ourts do frequently look to current billing rates in making fee awards"); *Skelton v. General Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988) (noting that "[t]he courts in this circuit generally use current rates"); *Lightfoot v. Walker*, 826 F.2d 516, 523 (7th Cir. 1987) (stating that "courts often calculate fee awards using current market rates as opposed to historic rates"); *In re Burlington N., Inc. Employment Practices Litig.*, 810 F.2d 601, 608-609 (7th Cir. 1986); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 663 (7th Cir. 1985).

Despite the fact that decisions from both the United States Supreme Court and the Seventh Circuit warrant a fee request at Wirth's counsel's current rates rather than historic rates, Wirth seeks only to apply her historic rates. Specifically, on May 1, 2019, Wirth's counsel's customary hourly rates increased as follows:

| Attorney | Historic Rate | Increased/Current Rate |
|---|---|---|
| Walcheske | $350.00 | $400.00 |
| Luzi | $350.00 | $400.00 |
| Potteiger | $350.00 | $400.00 |
| Tobin | $275.00 | $325.00 |

(Declaration of James A. Walcheske ("Walcheske Decl."), ¶ 8; Declaration of Scott Luzi ("Luzi Decl."), ¶ 7; Potteiger Decl., ¶ 7; Tobin Decl., ¶ 7.) Thus, in applying for attorneys' fees in the amount of $141,400.00, Wirth multiplied hours worked by the firm prior to June 1, 2019 using the firm's historic rates, and all time thereafter using the firm's current rates.

As this Court is likely aware, this District as well as the United States District Court for the Western District of Wisconsin have routinely approved both Wirth's counsel's historic and current rates. (Walcheske Decl., ¶ 9; Luzi Decl., ¶¶ 8-9; Potteiger Decl., ¶¶ 8-9; Tobin Decl., ¶ 8.) Likewise, these rates are consistent with what Wirth's counsel customarily bills clients for work performed on employment law cases in non-contingency matters. (Walcheske Decl., Ex. 1.)

Further, Wirth's counsel's hourly rates are reasonable because they are similar to the market rates that other attorneys of similar abilities and experiences in the community normally charge their paying clients for similar services and types of work. (*See* Declaration of Larry A. Johnson, ¶ 8; Declaration of Summer Hart Murshid, ¶ 8.)

> B. **Wirth's Counsel's 398.9 Total Hours Spent Litigating This Matter Are Reasonable**

Wirth's counsel believes that they have litigated this matter reasonably, efficiently, and effectively on behalf of Wirth given the outcome for Wirth, the legal issues (and defenses) presented, and the disputes involved, particularly in light of Defendant's refusal to engage in substantive settlement discussions or make a statutory offer of judgment pursuant to Rule 68, as well as Defendant's strategic decision to contest nearly every legal and factual issue raised by Wirth.

In seeking attorneys' fees in the amount of $141,400.00, Wirth's counsel voluntarily reduced the amount of time actually expended on this case, which was 528.0 hours, by 129.1 hours to 398.9 hours, which reflects only that time devoted to her WWPCL claims – for which she is a prevailing party. (Potteiger Decl., Ex. 2.) This methodology is consistent with Wisconsin law. *See Footville State Bank*, 146 Wis. 2d at 540.

In order to arrive at this result, Wirth's counsel excluded time devoted exclusively to Wirth's FLSA Retaliation Claim. (Potteiger Decl., Ex. 2.) For example, on May 14, 2018, Attorney Potteiger expended 0.80 hours for "[l]egal research and conference with MJT regarding FLSA retaliation." Accordingly, the firm reduced Attorney Potteiger's time to 0.0 hours.

Wirth's counsel further reduced their time proportionately with respect to those tasks that were intertwined with Wirth's WWPCL claims and Wirth's FLSA Retaliation Claim. In other words, prior to the filing of Wirth's *Amended Complaint* and the addition of Wirth's WWPCL Rest Period Claim, the firm reduced counsel's time by one-half (1/2), attributing fifty percent (50%) of counsel's time to Wirth's WWPCL Staff Meeting Claim.[2] Following the filing of Wirth's *Amended Complaint* and the addition of Wirth's WWPCL Rest Period Claim, the firm reduced counsel's time by one-third (1/3), attributing sixty-six percent (66%) of counsel's time to Wirth's WWPCL claims.[3] This approach is consistent with federal law. *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir.1998). Wirth's counsel further adjusted their time by billing for only one attorney's time during intraoffice meetings and conferences. (Potteiger, Ex. 2.)

Wirth's counsel's adjusted hours as compared to time actually spent litigating this action are summarized in the following table:

---

[2] This time was then rounded to the next tenth (1/10) of an hour.
[3] This time was then rounded to the next tenth (1/10) of an hour.

| Attorney | Actual Hours | Adjusted Hours |
|---|---|---|
| Walcheske | 56.5 | 53.6 |
| Luzi | 17.7 | 10.4 |
| Potteiger | 195.7 | 145.5 |
| Tobin | 258.1 | 189.4 |

(Potteiger, Ex. 2.)

As set forth in its billing entries, the descriptions of the types of work expended by Wirth's counsel establish that the firm only performed those tasks they deemed absolutely necessary and critical to the prosecution of Wirth's WWPCL claims. (Potteiger Ex. 2.) Moreover, Wirth's counsel's efforts helped Wirth recover all earned and unpaid wages she was entitled to for work performed during her employment at Defendant under the WWPCL and for which she was not properly and lawfully compensated.

This case was sufficiently uncertain to warrant the time and effort expended by Wirth's counsel in litigation. Specifically, given Defendant's legal strategy and settlement posture – or lack thereof – Wirth was not in a legal or strategic position to resolve this case absent trial. Despite Wirth informing Defendant as early as March 2020 of the precise amount Wirth claimed to be due on her WWPCL claims, Defendant vigorously disputed that it owed Wirth any sum of wages and thrust the case toward trial. In short, Wirth's counsel had no choice but to incur these fees or otherwise forfeit Wirth's ultimate victory on meritorious claims. *See, e.g., Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988).

Simply put, Wirth's counsel acted reasonably, effectively, and efficiently in litigating Wirth's WWPCL claims until resolution and did not unnecessarily create delay, needlessly increase expenses, or engage in emotionally driven or vexatious litigation. *See, e.g.*, *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991).

## III. THE ATTORNEYS' FEES AND COSTS SOUGHT BY PLAINTIFF SHOULD NOT BE ADJUSTED

The United States Supreme Court has recognized that there is "a strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a 'reasonable' fee," and "is wholly consistent with the rationale behind the usual fee-shifting statute." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987).

In limited circumstances, "once the lodestar amount is calculated, it may be adjusted." *Johnson*, 668 F.3d at 929; *Pickett*, 664 F.3d at 640–43. Courts can adjust the loadstar amount (either up or down) based upon the complexity of the case, the plaintiff's degree of success, the proportionality of the lodestar to the damages recovered, and the public interest advanced by the litigation. *Schlacher v. L. Offs. of Phillip J. Rotche & Assocs., P.C.,* 574 F.3d 852, 856-57 (7th Cir. 2009) (citing *Connolly*, 177 F.3d at 597); *Strange v. Monogram Credit Card Bank of Georgia,* 129 F.3d 943, 946 (7th Cir. 1997). Courts cannot arbitrarily award fees based upon a gut reaction; a court must provide a clear and concise explanation of its award. *Schlacher*, 574 F.3d at 857; *Small v. Richard Wolf Med. Instruments Corp.,* 264 F.3d 702, 708 (7th Cir. 2001); *In re Cont'll Ill. Sec. Litig.*, 962 F.3d 566, 570 (7th Cir. 1992). Further, it is inappropriate for a court to "eyeball" a fee request and reduce it by an arbitrary percentage because it subjectively seemed excessive. *See Schlacher*, 574 F.3d at 857; *Spellan v. Bd. of Educ.*, 59 F.3d 642, 646-47 (7th Cir. 1995) (citing *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986)).

Specifically, the Seventh Circuit has "'rejected the notion that the fees must be calculated proportionally to damages.'" *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (quoting *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir. 1994)). "To hold otherwise would in reality prevent individuals with relatively small claims from

effectively enforcing their rights." *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228-29 (7th Cir. 1972). And, given the nature of wage claims, it is not uncommon for attorneys' fee requests to far exceed the amount of judgment in a particular case. *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D. Wis. 2003) (collecting cases); *see also, Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F.App'x. 341, 342 (5th Cir. 2007) (approving fee award of $129,805.50 where damages were assessed at $23,357.30); *Cain v. Almeco USA, Inc.*, 2014 WL 2158413, at *1 (N.D. Ga. May 23, 2014) (approving fee award of $173,300.50 where damages were assessed at $6,907.47).

Here, Wirth seeks approval by this Court of attorneys' fees in the total amount of $141,400.00. Given that said request includes self-imposed reductions from counsel's actual time, *supra,* and the use of historical rates where the same is not otherwise required, no further reduction from the lodestar amount is warranted. Simply because the attorneys' fees in this case far exceed Wirth's total monetary recovery does not mean that this Court should do so. Contrarily, adjusting the lodestar figure downward would do nothing more than go against advancing the public interest. Indeed, where claims with "small cash value nevertheless have enough social value to warrant litigation, it follows that attorney's fees awards will sometimes exceed the damages awards in such cases—and the Supreme Court therefore has held that the damage award is not a ceiling on the fee award." *Ustrak*, 851 F.2d at 989, *citing, City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

The social utility of Wirth's WWPCL claims is apparent. "The legislative objective of [the WWPCL] is to foster the prompt payment of wages due to Wisconsin employees… It flows from a simple proposition: if workers are not paid their wages, they and their families will suffer." *Hubbard v. Messer*, 267 Wis. 2d 92, 104 (2003). Further, "fee-shifting provisions signal Congress'

intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives the American Rule." *See Anderson*, 578 F.3d at 545.

A fee award in the lodestar amount of $141,400.00 would serve the public interest and remedial purpose of the WWPCL by assuring that Wisconsin employers promptly pay wages due to Wisconsin employees or face repercussions. As a result, this Court should assess fees against Defendant and in favor of Wirth, the prevailing party, in the amount of $141,400.00.

## **CONCLUSION**

For all of the reasons stated herein, Plaintiff respectfully requests that this Court grant her Motion for Attorneys' Fees in the total amount of $141,400.00.

Dated this 23rd day of September, 2021

                                          WALCHESKE & LUZI, LLC

                                          **s/ *David M. Potteiger***
                                          James A. Walcheske, State Bar No. 1065635
                                          Scott S. Luzi, State Bar No. 1067405
                                          David M. Potteiger, State Bar No. 1067009
                                          Matthew J. Tobin, State Bar No. 1097545

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: dpotteiger@walcheskeluzi.com
E-Mail: mtobin@walcheskeluzi.com